**IN THE UNITED STATES DISTRICT COURT**
**EASTERN SECTION OF TENNESSEE**

DUSTIN L. BAKER,

     Plaintiff,

v.                                    Civil Action No.:

TENNESSEE RURAL HEALTH,
TENNESSEE FARMERS INSURANCE COMPANIES,
FARM BUREAU and THE TENNESSEE FARM BUREAU
FEDERATION, aka FARM BUREAU,

     Defendant.

## COMPLAINT FOR DECLARATORY ACTION

Plaintiff, through under-signed counsel, hereby files this Complaint for Declaratory

action and in support of the same would show unto this Honorable Court the following:

### PARTIES

1.     Plaintiff is a citizen of Tennessee and a resident of Carter County, Tennessee.

2.     Defendant is an insurance company located in Tennessee and has its principal

place of business based in Columbia, Tennessee. Tennessee Farmers Insurance Company (TFIC)

writes the health policies for Tennessee Rural Health (TRH). The Defendants can be served

through its registered agent, Julie Bowling, at 147 Bear Creek Pike, Columbia, Tennessee 38401.

The Defendants named herein are primary and parent companies.

### JURISDICTION AND VENUE

3.     Venue and jurisdiction are proper before this Court pursuant to 28 U.S.C. § 1331,

as well as Fed. R. Civ. P. 57 as the allegations raised herein directly impact the Affordable Care

Act.

**FACTS GIVING RISE TO DECLARATORY ACTION**

4.      Plaintiff purchased a health insurance policy from the Defendant on December 11, 2022. Exhibit A.

5.      Plaintiff's health policy went into effect on January 1, 2012.

6.      On February 14, 2012, the Plaintiff suddenly became faint and fell unconscious. The Plaintiff had never been diagnosed with this medical issue he still does not know the cause of, and it had never manifested itself prior to paying for his health insurance policy with the Defendant.

7.      On February 15, 2012, the Plaintiff was taken to East Tennessee State University Family Medicine located in Johnson City, Tennessee to address why he had fallen unconscious the day prior.

8.      East Tennessee State University Family Medicine referred the Plaintiff to the emergency room for his symptoms.

9.      The medical staff in the ER ran several tests on the Plaintiff and the Plaintiff was kept overnight for observation.

10.     On February 16, 2012, the Plaintiff was released from the hospital and was advised to follow up with his general practitioner.

11.     On February 18, 2021, the Plaintiff saw his general practitioner, Dr. Shiela Pack. Dr. Pack referred the Plaintiff to a neurologist, Dr. Ross.

12.     The Plaintiff appeared at his appointment with Dr. Ross and underwent evaluation, which was referred by Dr. Pack. Defendant refused to cover the cost of Dr. Ross's visit due to migraine headaches.

13. At the appointment, Dr. Ross advised the Plaintiff that he would need to see him on a regular basis so that it could be determined what was causing the Plaintiff's extreme headaches, vertigo and losing consciousness.

14. Plaintiff had to spend voluminous hours of his time away from his job on the telephone with the Defendant to make them cover the claim by advising them of the fact that migraine headaches were never a pre-existing condition. The migraine headaches were covered under the policy at issue herein.

15. Despite the policy covering the claim and the Plaintiff's evidence from his doctors that migraine headaches were not a preexisting medical condition the Defendant refused to cover Dr. Ross's bill. At this point, the Defendant produced another excuse for not covering the claim, to wit, that the Plaintiff has made misrepresentations on his health insurance application.

16. Plaintiff not knowing were to turn after the denial of thousands of dollars in covered medical expenses scheduled an appointment with Dr. Pack. Thereafter, Dr. Pack dispatched a letter to the Defendant advising him that the medical conditions the Defendant was falsely claiming as preexisting were in fact not preexisting.

17. On October 29, 2012, only after receiving Dr. Pack's letter did the Defendant reinstate the Plaintiff's health coverage.

18. Plaintiff has never had a chronic problem until after he had secured health insurance with the Defendant and had zero indication that he had a potential neurological medical condition prior to securing health insurance with the Defendant.

19. Thereafter, due to ongoing damages which are still present today, the Plaintiff contacted Blue Cross Blue Shield the third-party administrator on the denial of the Plaintiff's claims regarding his sudden health condition after he had been issued a health insurance policy

from the Defendant. The appeal of the Defendant's denial was sent to the desk of Candace Ward with Blue Cross Blue Shield. Ms. Ward was the assistant to Jada Hicks who wrote the initial denial letter of the claim from the Defendant.

20.     During his conversation with Ms. Ward on the telephone, Ms. Ward indicated to Mr. Baker that his denied claims would be refiled.

21.     To date, the Defendant has not allowed the Plaintiff's denied claims to be refiled.

22.     Since that time, the Plaintiff has continued to speak with the Defendant and press forward his denied claims to no avail. Defendant continues to ignore its insured.

23.     Defendant then tried to put the onus on Blue Cross Blue Shield who was merely an administrator and had not made the decision to deny Plaintiff's claims in an attempt to kick the can down the road and cause the Plaintiff delay, damage to his credit and lawsuits being filed against the Plaintiff for the unpaid medical claims. Coll. Exhibit B.

24.     As a result of the ongoing fraud by the Defendant herein, the Plaintiff has suffered lost wages, medical and emotional damages, financial damages, etc.

25.     The result of the Defendant's ongoing fraud, breach of contract, damage to personal property and bad faith refusal to pay has nearly resulted in the Plaintiff's financial ruin.

26.     The Affordable Care Act ("ACA"), also known as Obamacare, was enacted on October 29, 2009.

27.     The ACA was to provide insureds with ending discrimination based on pre-existing conditions by:
- Ending limits on care
- Ending coverage cancellations
- Tax credits
- Expanding Medicaid eligibility

- Creating health insurance exchanges

- Mandating that Americans purchase or obtain health insurance coverage.

42 U.S.C. § 18001.

28.     Tennessee set up its own regulations concerning the ACA as did five other states in the Republic.

29.     In Tennessee, the law enacted, which conflicts with the ACA, allows for the program of health insurance coverage which the Plaintiff obtained herein to be considered non-insurance.

30.     Upon information and belief, Tennessee enacted this junior Act to the ACA in order to avoid liability under HIPPA, as well as the ACA, however, since Tennessee's Act expands beyond the rules and regulations of the ACA it is in conflict with the same to the detriment of the Plaintiff herein and perhaps many other Tennesseans that were tricked into purchasing this worthless insurance policies.

31.     It is for the reasons set forth herein, that the Plaintiff seeks a declaratory judgment by this Court pursuant o Fed. R. Civ. P. 57 to determine whether the ongoing acts and omissions of the Defendant herein violate the ACA and is therefore unconstitutional thereby invalidating Tennessee's Act.

**WHEREFORE, PREMISES CONSIDERED, THE PLAINTIFF SEEKS A DECLARATORY ACTION PURSUANT TO FED. R. CIV. P. 57 THAT TENNESSEE'S AFFORDABLE HEALTH ACT IS IN VIOLATION OF THE ACA, AS WELL AS HIPPA AND THE ADA AND FOR THE PLAINTIFF'S EXPENSES AND ATTORNEY'S FEES FOR HAVING TO FILE THIS ACTION.**

Respectfully submitted,

s/Russ Egli
Russ Egli, BPR#24408
The Egli Law Firm
Attorney for the Plaintiff
11109 Lake Ridge Drive, FL3
Knoxville, TN 37934
865-274-8872